RICHARD GREGORY, ADM'R, v. G. W. VAN VLECK, ADM'R.

The present bears no analogy or resemblance to the case of Womack v. Womack, (8 Tex. R. 397.) The sale (of a slave, the separate property of the wife) was not made in satisfaction of any liability of the wife, or any claim chargeable on her separate estate, or for her benefit or that of her family ; nor were the proceeds applied to any purpose beneficial to herself, her family, or her separate estate.

To hold the sale valid to divest her title (of the wife, without privy acknowledgment of the bill of sale) or to impose on her the necessity of refunding the price which she never received, and which was not applied to her use or benefit, or according to her wish or direction, would not only be inequitable and unjust, but it would be virtually to repeal the Statute which prescribes the mode in which a married woman may convey her separate property.

It would seem that an administrator, who is the defendant in the suit, is an incompetent witness in behalf of the estate he represents, and cannot be made competent by a release of all his personal interest in the suit, and all commissions on any property recovered therein.

Appeal from Tyler. Tried below before the Hon. James M. Maxcy.

On the 11th day of March, 1854, Orlando S. Betsill and

Martha A., his wife, united in a bill of sale of a slave boy Champion, about six years of age, to Anna Ratcliff, for the price of $300. On the same paper on which the bill of sale was written, there was a certificate of the acknowledgment of the same as the act and deed of the grantors, and of the privy examination of the wife, made out to be authenticated by the Clerk of the County Court, but not so authenticated. Mrs. Betsill died, and on the 1st of May, 1855, her administrator, George W. Van Vleck, brought this suit against Anna Ratcliff to recover the said slave. The defendant died and her administrator, Richard Gregory, was made a party.

The plaintiff claimed the slave on the ground that the bill of sale " was null and void, and was never legally authenticated," that it was made " in ignorance of her right and was " never acknowledged by her, the said petitioner's intestate, in. " the manner required by law, nor in any other."

Defendant answered that she purchased the slave from plaintiff's intestate for the sum of three hundred dollars, and made the bill of sale a part of her answer, and prayed judgment against the estate of said Martha A., for three hundred dollars and interest, in case the plaintiff should recover the slave, and for a lien on the said slave for that sum. Defendant amended her answer, alleging that she paid full value of the slave ; that the proceeds of the sale enured to the benefit of said Martha A. and her family ; that Orlando S. Betsill was insolvent at the time, and that said Martha had no other means of support for herself and family ; and that said Martha A., freely and willingly sold the slave to defendant, without any compulsion on the part of her husband or any other person.

Plaintiff proved that the slave was the property of Martha A. Betsill on the 11th of March, 1854, scheduled as such, and known as such to Mrs. Ratcliff ; and closed.

Defendant gave in evidence the bill of sale by Betsill and wife ; and there was copied with it the blank certificate of acknowledgment before described.

Defendant then offered to introduce Richard Gregory, who had executed a release of all personal interest in the suit, and especially of all commissions for or on account of any property that might be recovered in the suit; plaintiff objected on the ground that he was administrator and a party to the suit; objection sustained, and defendant excepts.

Defendant then offered to introduce E. A. Ratcliff, who was excluded on the ground that he was an heir of Anna Ratcliff; and defendant excepted.

Defendant then gave in evidence the deposition of A. J. Nelson, who testified that he was acquainted with the parties to the suit; that he had been acquainted with Mrs. Martha A. Betsill.

Int. 3. Please state if you heard Mrs. Martha A. Betsill say any thing in relation to a contract and sale of any property, or what disposition she had made of any property?

Ans. I heard Martha A. Betsill say, in speaking of provision, that she had let Anna Ratcliff have the negro boy Champion; so that they would not have him to feed. I asked her what she let her have him for. She said for the groceries that Orlando S. Betsill got; that the groceries would never be any benefit to her or any body else, but no matter for that.

Int. 4th. If you answer the last interrogatory, please state who she said that contract and sale was with; what property was contracted for and sold, or mentioned; and state all you heard her say in relation to the subject matter, particularly describing the property contracted for and sold, or mentioned in conversation aforesaid?

Ans. I heard nothing about a contract or sale, further than mentioned in my last answer. The property mentioned was a negro boy Champion. Martha A. Betsill said that she let Anna Ratcliff have Champ for the groceries that O. S. Betsell got. She said it was no use for O. S. Betsill to let Anna Ratcliff have the negro boy; that she must sign the papers herself.

Gregory v. Van Vleck.

Int. 5th. If you heard Mrs. Betsill say any thing about any property that she had disposed of, please state what property it was ; who she let have it; for what, and at what time she made the statement to you ; and all you know about the matter or heard her say ?

Ans. I heard her speak of the negro boy Champ ; as to any disposition she had made, she only said she would not have him to feed this year.  She let Anna Ratcliff have him for the groceries O. S. Betsill got ; this was about the 1st of March, 1855.

Int. 6th. If you answer the fifth interrogatory, please state if Mrs. M. A. Betsill appeared, from the conversation with you, willing to, and satisfied with, the disposition she had made of the property she spoke of to you, and also if she made any claim to said property ?

Ans. Mrs. M. A. Betsill was satisfied for Anna Ratcliff to have the negro as long as she lived, but she was not satisfied to let him go for the groceries, as she did not think they would do her or any body else any good.   Martha A. Betsill claimed the negro boy Champ as her property.

The slave was proved to be worth from four to six hundred dollars ; he had been sequestered and was in the hands of the Sheriff, not being replevied.

A statement was filed in this Court, signed by the attorneys of the parties, to the effect that the following facts were proved at the trial, but were omitted in the hurry of making up the statement of facts at the close of the Term.

Anna Ratcliff was the mother of Martha A. Betsill, and was an old lady.  The three hundred dollars were paid to O. S. Betsill in the presence of E. J. Parsons.  Martha A. Betsill was not present at the time.  Martha A. Betsill had very little property besides the negro woman Winnie, (mother of Champion,) and her children.  O. S. Betsill was insolvent. Soon after the payment of the money to Betsill, he established

a grocery in Woodville, consisting principally of liquor and tobacco, with some sugar, coffee and candles.

The Court instructed the jury as follows :

A conveyance made by husband and wife, of the wife's separate property, the husband being insolvent, will pass the wife's title to the property, if necessary for the support of the family.

If the jury believe from the evidence, that Mrs. Betsill, of her own violation, together with her husband, made a conveyance or bill of sale of the boy Champion to Anna Ratcliff, and the sale was necessary for the support of Mrs. Betsill and her children, she could exercise such a right, and is bound by her act, and the bill of sale may be considered as evidence of her intention in the premises.

If the jury believe from the evidence, that the sale was not made by Betsill and wife, of her separate property, Betsill being insolvent, and that such sale was necessary to procure necessaries for the support of the family, she is bound by it.

If the jury believe from the evidence, that the sale was not necessary to procure necessary supplies for the support of the family, Mrs. Betsill could not bind herself, so as to pass the title to the negro in controversy, they will find accordingly.

It is a principle as old as the law itself, that he who seeks equity must do equity. And should the jury believe from the evidence, that the plaintiff ought to recover the boy, they may require the plaintiff to refund the purchase money with interest.

But should the jury believe that the purchase money of the boy Champion went into the hands of Betsill, and was by him invested in a grogshop, Mrs. Betsill cannot be held bound to refund the purchase money. But Betsill may be held so bound, and the jury will find accordingly.

The defendant requested the Court to charge the jury :

That if they believe the sale not freely and voluntarily made by Martha A. Betsill, but that defendant's intestate paid a valuable consideration for the slave, the money so obtained was fraudulently obtained ; and that Martha A. Betsill being

a party to the fraud, she is bound to refund the purchase money with interest.

This instruction was given as asked, with the addition that fraud is never presumed, but must be proven.

Defendant asked two additional instructions, which were refused, as follows :

1st. If the jury believe from the evidence that plaintiff's intestate, M. A. Betsill, sold said boy Champion to Anna Ratcliff, and that the same was freely and voluntarily made by M. A. Betsill, the defendant is entitled to recover said boy.

2nd. If from all the evidence the jury believe that Mrs. M. A. Betsill did not wish to retract the sale of said boy, they will find for the defendant.

Verdict for plaintiff ; judgment for plaintiff for the slave, and that the Sheriff deliver him to the plaintiff, &c.    Motion for new trial overruled, &c.


*E. B. Pickett* and *T. Rock*, for appellant.   I.   Appellant's intestate is not responsible for the disposition that was made of the purchase money, after the boy was bought and paid for ; she had no control over it, and could not be affected by it ; on the contrary, it matters not whether the purchase money was paid to Betsill or his wife.   The law makes the husband the agent of the wife, in respect to her separate property ; and it is submitted that a payment to the husband, was a payment to the wife.

II.   The Court erred in refusing to give the charges marked one and two, asked by appellant.   These charges are believed to contain the law.   See Womack v. Womack, 8 Tex. R. 397. That case is believed to be decisive of this case.

III.   The Court erred in excluding the testimony of Gregory, he being a mere nominal party.

IV.   The finding of the jury was contrary to the law and the evidence.   (Womack v. Womack, 8 Tex. R. 397.)

V. It is a rule in equity, that he who seeks equity must do equity. Under this rule it is insisted that appellee could not recover the boy Champion, without refunding the purchase money.

*B. C. Franklin*, and *H. N. & M. M. Potter*, for appellee.

WHEELER, J. The present bears no analogy or resemblance to the case of Womack v. Womack. (8 Tex. R. 397.) The sale was not made in satisfaction of any liability of the wife, or any claim chargeable upon her separate estate, or for her benefit or that of her family ; nor were the proceeds applied to any purpose beneficial to herself, her family, or her separate estate. To hold the sale valid to divest her title, or to impose on her the necessity of refunding the price, which she never received and which was not applied to her use or benefit, or according to her wish or direction, would not only be inequitable and unjust, but it would be virtually to repeal the Statute which prescribes the mode in which a married woman may convey her separate property. There manifestly is no error in the judgment, and it is affirmed.

Judgment affirmed.